IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALFRED LOUIS MARTINEZ, JR., <br><br> Plaintiff, <br><br> vs. <br><br> TRIPLE S STEEL SUPPLY CO. aka INTSEL STEEL WEST, LLC, <br><br> Defendant. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br><br> Case No. 2:13-CV-693 |

In May 2011, Plaintiff Alfred Louis Martinez, Jr. was fired after he and a fellow employee, Jeff Peterson, got into a physical fight.  Mr. Peterson was also fired.

After Mr. Martinez lost his job, he brought a complaint against his former employer, Defendant Triple S Steel Supply Co., aka Intsel Steel West LLC (Intsel), under Title VII of the Civil Rights Act of 1964.  He alleges discrimination on the basis of race (Mr. Martinez is Hispanic) and discrimination on the basis of disability (his injured knee makes it difficult for him to walk long distances).[1]  He also filed a second race discrimination complaint when Intsel rehired Mr. Peterson one year later.

Intsel moves for summary judgment, contending that (1) Mr. Martinez's charges of discrimination are time-barred in this court; and (2) he has failed to establish a prima facie case

---

[1]Although Mr. Martinez also brought a claim for discrimination on the basis of age and disability, he has since conceded that those claims are not viable and the court should dismiss them.

of discrimination in connection with his discharge and Intsel's rehiring of Mr. Peterson. For the reasons set forth below, the court finds that Mr. Martinez's first discrimination claim fails because it was untimely and his second discrimination claim fails because he has not established an element of a discrimination prima facie case—i.e., that he applied for and was rejected for the job Mr. Peterson got one year later. Accordingly, the court GRANTS Intsel's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**Firing of Mr. Martinez**

On December 15, 2005, Mr. Martinez began working for Intsel, a company that manufactures structural steel products. On May 23, 2011, Mr. Martinez, who worked primarily on the manufacturing company's "slitting line,"[2] got into an on-site physical fight with office manager and scheduler Jeff Peterson. Both men submitted written statements. Two days later, after the two men were interviewed, Intsel fired both of them for fighting. Intsel noted that fighting was a direct violation of the rules set forth in the Intsel Employee Handbook.

On July 18, 2011, Mr. Martinez filed an intake questionnaire with the Utah Anti-Discrimination and Labor Division (UALD), in which he complained about Intsel's May 25, 2011 decision to fire him. (See Ex. 2 to Pl.'s Opp'n Mem. (Dkt. No. 18-2 at 2-7).) In the questionnaire, he raised allegations that the UALD categorized as a claim of discrimination on the basis of race. (See id.; Draft Charge of Discrimination (unsigned), attached as Ex. 4 to Pl.'s Opp'n Mem. (Dkt. No. 18-4 at 4).)

---

[2]Defendant described this as "setting rotary shear knives and spacers on the arbor of the slitter." (Def.'s Mot. for Summ. J. (Dkt. No. 15) at 2, 6.)

On August 23, 2011, the UALD sent a draft Charge of Discrimination that it had prepared based on Mr. Martinez's intake questionnaire. (See Aug. 23, 2011 Ltr. from Verolinda Granados, Intake Officer for UALD, to Mr. Martinez (Dkt. No. 18-4 at 2).) The UALD required that the Charge be signed and notarized. "You must sign the Charge in front of a Notary. . . ." (Id. (emphasis in original).) It further warned him that

> [t]he Charge is not legally filed until you return it to our office with your notarized signature. **Your Charge must be returned to the Commission within 180 days of the last alleged discriminatory act for the State of Utah to take action. Your Charge must be returned to our office within 300 days of the last alleged discriminatory act for the Federal Government to take any action.**

(Id. at 3 (emphasis in original).)

About the same time, in August 2011, Mr. Martinez began a new job with a different employer.

Approximately ten months later, on May 10, 2012, Mr. Martinez signed the Charge of Discrimination the UALD had mailed to him nine months earlier. The UALD received the signed charge the next day, and on May 17, 2012, the UALD dismissed the Charge for lack of jurisdiction. The UALD said it had received Mr. Martinez's Intake Questionnaire but could not take action on his behalf because

> [t]he State of Utah has jurisdiction over a discrimination complaint for 180 days. The Equal Employment Opportunity Commission (EEOC) has jurisdiction for 300 days from the last date of harm. Your last date of harm was May 27, 2011. Our office sent your Charge to you to review and notarize on August 23, 2011, but we did not receive your notarized Charge back from you until May 11, 2012 which is 350 days from the last date of harm. At this time, neither our office, nor the EEOC has jurisdiction.

(May 17, 2012 Ltr. from Verolinda Granados, Intake Officer for UALD, to Mr. Martinez, attached as Ex. 6 to Pl.'s Opp'n Mem. (Dkt. No. 18-6 at 2) (emphasis added).) The UALD was

relying on Utah Code, which requires that:

> (a) Any person claiming to be aggrieved by a discriminatory or prohibited employment practice may . . . make, sign, and file with the division a request for agency action.
>
> (b) Every request for agency action shall be verified under oath or affirmation.
>
> (c) A request for agency action made under this section shall be filed within 180 days after the alleged discriminatory or prohibited employment practice occurred.

Utah Code Ann. § 34A-5-107(1)(a)-(c).

**Rehiring of Mr. Peterson**

In the meantime, in May 2012, approximately one year after Intsel fired Mr. Peterson, it rehired him. During that year, before he was rehired, Mr. Peterson actively tried to get his job back, calling Intsel's Vice President Robert Elkington every few weeks for almost a year and sending two letters to Intsel's President asking to be rehired. Eventually, Intsel rehired him but with conditions. He took a cut in pay and benefits, was demoted, and had to take (and pay for) anger management classes.

Soon after that, Mr. Martinez learned that Intsel had rehired Mr. Peterson. Around that time, Mr. Martinez's former supervisor, Jeff Walters, asked Mr. Martinez whether he was interested in coming back to work for Intsel, and Mr. Martinez replied that he was interested. But Mr. Martinez never actually reapplied or took any affirmative action to get rehired at Intsel. And he heard nothing further from Mr. Walters.

Instead, on June 25, 2012, Mr. Martinez filed a second intake questionnaire with the UALD. (See Ex. 7 attached to Def.'s Mem. Opp'n (Dkt. No. 18-7).) In the subsequent Charge of Discrimination prepared by the UALD based on Mr. Martinez's intake questionnaire, he

alleged that Intsel, by rehiring Mr. Peterson but not Mr. Martinez, had discriminated against him because he is Hispanic.  (See Ex. 9 attached to Def.'s Mem. Opp'n.)  Mr. Martinez signed the Second Charge of Discrimination on January 24, 2013.

The UALD said it did not have jurisdiction over his Second Charge of Discrimination because Mr. Martinez had signed, notarized, and submitted it more than 180 days after the alleged adverse action occurred (the rehiring of Mr. Peterson around May 2, 2012).  (See Feb. 1, 2013 Ltr. from Eric Larsen, Anti-Discrimination & Labor Div. for the State of Utah, to Robert Elkington, Triple S Steel Supply Co., attached as Ex. 1 to Def.'s Mot. & Mem. Summ. J. (Dkt. No. 15-1 at 257).)  But the UALD forwarded the Charge to the EEOC, which still had jurisdiction (that is, the Charge had been filed within 300 days of the date Mr. Peterson was rehired).

On April 30, 2013, the EEOC dismissed the Charge:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

(Apr. 30, 2013 Dismissal & Notice of Rights from the EEOC to Mr. Martinez, attached as Ex. 9 to Def.'s Mot. & Mem. Summ. J. (Dkt. No. 15-1 at 258).)  At that point, Mr. Martinez filed the case now before the court.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, after viewing the record and making all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

**First Charge of Discrimination**

An employee bringing a charge of discrimination on the basis of race or disability must file a timely claim with the Utah Anti-Discrimination and Labor Division (UALD) or the Equal Employment Opportunity Commission (EEOC). A claim not filed within the statutory time limits is barred in court. See, e.g., National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) ("A party . . . must file a charge within either 180 or 300 days of the date of the [adverse employment action] or lose the ability to recover for it" under Title VII). The Utah labor division statute (under which Mr. Martinez filed his claim) unequivocally states that any

> person claiming to be aggrieved by a discriminatory or prohibited employment practice may . . . make, sign, and file with the division a <u>request for agency action</u>. Every request for agency action <u>shall be verified under oath or affirmation</u>. A request for agency action made under this section <u>shall be filed within 180 days</u> after the alleged discriminatory or prohibited employment practice occurred.

Utah Code Ann. § 34A-5-107(1)(a)-(c) (emphasis added). Under Title VII, the filing deadline is extended to 300 days if the charge is initially filed with the state agency. 42 U.S.C. § 2000e-5(e)(1).

The First Charge of Discrimination was untimely under either deadline because it was filed 350 days from the date he was fired. The draft Charge sent to him by the UALD clearly stated that he had to sign and return the form within the time period before the agency would take action:

6

> The Charge is not legally filed until you return it to our office with your notarized signature.  **Your Charge must be returned to the Commission within 180 days of the last alleged discriminatory act for the State of Utah to take action. Your Charge must be returned to our office within 300 days of the last alleged discriminatory act for the Federal Government to take any action.**

(See Aug. 23, 2011 Ltr. from Verolinda Granados, Intake Officer for UALD, to Mr. Martinez (Dkt. No. 18-4 at 3) (emphasis in original).)

Although Mr. Martinez contends that his filing of the intake questionnaire (as opposed to returning the signed and notarized charge) was sufficient to satisfy the time requirements, he does not cite to anything providing an exception to the Utah statute. The filing requirements in Utah are clear, and he did not meet them. Because he did not timely file a charge in Utah, the UALD did not recognize the filing. "The Charge is not legally filed until you return it to our office with your notarized signature." (Aug. 23, 2011 Draft Charge of Discrimination, attached as Ex. 4 to Pl.'s Opp'n Mem.) As a matter of law, the UALD did not recognize his filing because it was not timely filed, signed, and notarized, and so he did not institute proceedings with the UALD.

By extension, he did not file a valid claim with the EEOC. See 42 U.S.C. § 2000e-5(c) (in a state that has an agency available to provide a remedy for discrimination (a "deferral state" such as Utah), a claimant only preserves his right to have claim reviewed by the EEOC if he files a complaint with the state agency at least sixty days before the 300th day after the alleged discrimination occurred). UALD's draft Charge of Discrimination to Mr. Martinez points that out in bold lettering: "The Charge is not legally filed until you return it to our office with your notarized signature. . . . **Your Charge must be returned to our office within 300 days of the last alleged discriminatory act for the Federal Government to take any action.**" (Aug. 23,

2011 Draft Charge of Discrimination.)

Mr. Martinez did not follow those instructions, so his First Charge of Discrimination is time-barred in this court.

**Second Claim of Discrimination**

The court finds that Mr. Martinez's second claim of discrimination is timely, but the claim fails as a matter of law.  Mr. Martinez may establish a violation of 42 U.S.C. § 2000e-2(a)(1), by presenting either direct evidence of discrimination, or indirect evidence through the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Crow v. ADT Sec. Servs., 649 F.3d 1189, 1194 (10th Cir. 2011).  Here, he relies on indirect evidence to establish a violation through the McDonnell Douglas three-part burden shifting framework.

Under that three-part burden shifting framework, Mr. Martinez must first establish a prima facie case of discrimination.  If he does, Intsel must offer proof of a legitimate, non-discriminatory reason for the action.  If Intsel meets its burden, then Mr. Martinez, in order to survive summary judgment, has to present evidence that the reason offered was a pretext for discrimination.  McDonnell Douglas, 411 U.S. at 802-03.

To establish a prima facie case that Intsel discriminated against him during the rehiring process, Mr. Martinez must show that: (1) he is a member of a protected class;  (2) he applied for an available job for which he was qualified; (3) despite being qualified, he was rejected; and (4) after he was rejected, the position remained open and the employer continued to accept applications for the job.  Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991); Subia v. Colorado & S. Ry. Co., 565 F.2d 659, 661 (10th Cir. 1977).  Mr. Martinez has not established the second element.

8

The court agrees with Intsel's assertion that Mr. Martinez "cannot allege an adverse job action against a company he did not work for and had not applied to at the time of the alleged action." (Def.'s Reply (Dkt. No. 22) at 2.) "In order for a plaintiff to assert that her employer retaliated against her by failing to hire, rehire, or promote her, that employee must have applied for the position she was denied." Stover v. Martinez, 382 F.3d 1064, 1072 (10th Cir. 2004). There is no evidence that a position was open in the first place.

Mr. Martinez offers statements he made to Jeff Walters, his former supervisor, about his interest in returning. According to Mr. Martinez, Mr. Walters asked Mr. Martinez whether he would be interested in coming back to work for the company. But that is not an announcement of a job opening. And Intsel Vice President Elkington who re-hired Mr. Peterson never heard from Mr. Martinez.

Mr. Martinez also points to a managers meeting that Intsel held to reintroduce Jeff Peterson. Mr. Martinez testified in his deposition as follows:

> A.  [T]he maintenance manager at the time had said, Well, if you're rehiring Jeff Peterson, what about Junior? [Mr. Martinez's father ("Senior") also worked at Intsel.] And one of the bosses there said, Well, we're not going to rehire him. We have our own lawyers. Let him sue us if he wants to.
>
> Q.  And who was that?
>
> A.  That was — I can't remember his name either. But he had told my dad – so it's secondhand, but he had told my dad direct that that's what he said in the meeting. And he was the maintenance manager.

(Dep. of Alfred Louis Martinez, Jr., attached as Ex. 1 to Pl.'s Opp'n, at 34-35.) The court will not rely on information received "secondhand." The hearsay provided by Mr. Martinez does not even give the name of the speaker. Moreover, the statement, even if admissible, does not

demonstrate that Mr. Martinez applied for an available position.

Mr. Martinez has not established a prima facie case of discrimination based on Intsel's rehiring of Mr. Peterson. Accordingly, his second claim of discrimination fails as a matter of law.

**ORDER**

For the foregoing reasons, Defendant Triple S Steel Supply Co., aka Intsel Steel West, LLC's Motion for Summary Judgment (Dkt. No. 15) is GRANTED.

DATED this 3rd day of September, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge